FILED
06/21/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2019 Session

## CATHRYN HELRIGEL PIERCE v. SHERMAN LANE PIERCE

**Appeal from the General Sessions (Domestic Relations) Court for Meigs County**
**No. D-1660          Casey Mark Stokes, Judge**

_____

### No. E2018-01301-COA-R3-CV
_____

In this divorce action, the Domestic Relations Court of Meigs County ("trial court") entered a "Final Judgment of Divorce" on June 21, 2018.[1] In this judgment, the trial court awarded to the wife, *inter alia*, possession of a parcel of marital real property improved with a mobile home, along with its associated mortgage indebtedness, and fifty percent of the marital portion of the husband's military retirement, or $481.11 per month. The trial court awarded to the husband, *inter alia*, a different parcel of marital real property improved with a mobile home and further ordered the husband to pay the wife's automobile loan obligation in the total amount of $22,192.86. The trial court denied the wife's request for alimony of any type. The wife timely appealed. Following our thorough review of the record, we reverse the portion of the trial court's judgment denying an award of alimony and attorney's fees to the wife. Based upon our review of the evidence and the applicable statutory factors, we conclude that the wife is entitled to an award of alimony *in futuro* in the amount of $1,600.00 per month. We further determine that the wife is entitled to an award of attorney's fees incurred at the trial court level as alimony *in solido*. We remand the issue of the amount of reasonable attorney's fees to be awarded to the wife to the trial court for entry of an appropriate award. We affirm the trial court's judgment in all other respects. Regarding the wife's request for an award of attorney's fees incurred on appeal, we determine that such request has been waived.

_____

[1] By private act, the Tennessee General Assembly has "conferred domestic relations jurisdiction on the General Sessions Court of Meigs County" noting that "while it is exercising domestic relations jurisdiction it shall be known as the domestic relations court of Meigs County." *See* 2000 Tenn. Priv. Acts, Ch. 117 § 1. The private act also provides that "[a]ppeals from the judgments of the domestic relations court arising under this act shall be to the court of appeals or to the Supreme Court in the same manner as provided in such cases from the chancery and circuit courts." *See* 2000 Tenn. Priv. Acts, Ch. 117 § 4.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions (Domestic Relations) Court Affirmed in Part, Modified in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Philip M. Jacobs, Cleveland, Tennessee, for the appellant, Cathryn Helrigel Pierce.

Joshua H. Jenne, Cleveland, Tennessee, for the appellee, Sherman Lane Pierce.

**OPINION**

I.  Factual and Procedural Background

The parties in this divorce action were married in June 1972.  On March 13, 2017, the wife, Cathryn H. Pierce ("Wife"), filed a "Complaint for Legal Separation and/or Divorce from Bed and Board" against her husband, Sherman L. Pierce ("Husband").  Husband filed a separate divorce action a few days later.  On April 7, 2017, the trial court entered an order consolidating the two divorce actions.

On May 2, 2017, the trial court entered an agreed order, *inter alia*, allowing Wife to retrieve certain items of personalty from the former marital residence, directing Husband to continue paying various marital liabilities, and ordering Husband to pay to Wife $1,000.00 per month as temporary support.  Husband filed a statement of income and expenses on that same day, demonstrating a net monthly income of $6,472.07 and monthly expenses of $4,320.30.  Wife concomitantly filed a similar statement, demonstrating a net monthly income of $398.00 and monthly expenses of $2,419.60.

On November 1, 2017, the trial court entered an order adding the parties' adult son, B.P., as a third-party defendant in this matter due to his status as a tenant in common with the parties related to the ownership of one parcel of real property.  Also by that order, the trial court denied Wife's request for increased temporary support.  Subsequently, on February 7, 2018, the trial court entered an order declaring the parties divorced pursuant to Tennessee Code Annotated § 36-4-129.  All remaining issues were set for trial.

The trial court conducted a bench trial on March 21, 2018, and thereafter entered a "Final Judgment of Divorce" on June 21, 2018.  In its judgment, the trial court determined that the parties were the owners of three parcels of real property located in Meigs County.  With regard to the first parcel, located at 5469 State Highway 60, the court found that the property was owned by the parties and B.P. as tenants in common.  Pursuant to the parties' stipulation, the real property was valued at $36,000.00.  The court

ordered that this property would be sold and the proceeds divided among the parties and B.P.

With respect to the second parcel of real property, located at 632 Pierce Road, the trial court determined that the property would be awarded to Husband. The value of this tract, improved by a mobile home, was stipulated to be $63,000.00. Concerning the third parcel of real property, located at 661 Pierce Road and improved by a mobile home, Husband contended that the value should be established at $140,000.00 based upon the property's potential for subdivision. The court assigned a value of $90,000.00 to the property at 661 Pierce Road in accordance with an appraisal provided as an exhibit during trial. The court awarded this property to Wife, finding that this was the residence where she had been residing with B.P., and ordered Wife to pay the associated mortgage indebtedness in the approximate total amount of $50,000.00. The court also directed Wife to refinance the mortgage indebtedness or otherwise take steps to remove Husband's name from that debt obligation.

The trial court divided the remainder of the parties' marital property according to a list attached to the judgment as Exhibit A. Although Wife was awarded her automobile, a 2015 Ford Escape, Husband was ordered to pay the automobile loan associated therewith in the total amount of $22,192.86, to be paid in monthly installments.

Each party was allowed to retain his or her respective Social Security retirement benefits, and Husband's income from the Veteran's Administration was awarded exclusively to him. With respect to Husband's military retirement benefits, the trial court found:

> Husband receives military retirement in the amount of $1,443.32 per month. Predicated on the stipulated proof and testimony at trial, the Court finds that Husband's military retirement is based upon 21 years of total military service, 14 of which transpired during the marriage of Husband and Wife. The marital portion of Husband's military retirement therefore is 2/3 of the whole. Wife shall be and hereby is awarded 50% of the marital portion of Husband's military retirement and which when applied results in Wife's entitlement to, and award herein, of $481.11 per month.

The court further determined that Wife was in need of certain dental and/or orthodontic treatment, which would be paid for by insurance or by Husband. The court denied Wife's request for alimony of any type. Wife timely appealed.

## II. Issues Presented

Wife presents the following issues for our review, which we have restated slightly:

1. Whether the trial court abused its discretion by determining that Wife was not entitled to an award of alimony, specifically alimony *in futuro*.

2. Whether the trial court erred by failing to award Wife alimony *in solido* in the form of attorney's fees.

## III. Standard of Review

As our Supreme Court has explained concerning a trial court's determination of whether to award spousal support:

> [T]rial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson,* 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor . . . ."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree,* 16 S.W.3d 356, 360 (Tenn. 2000).

> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard,* 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew,* 40 S.W.3d at 470; *Robertson v. Robertson,* 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard,* 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent,* 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson,* 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v.*

*Wright,* 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson,* 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright,* 337 S.W.3d at 176; *Henderson,* 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (footnote omitted).

## IV. Alimony

Wife asserts that the trial court erred by failing to properly consider the relevant statutory factors when making its determination concerning her request for alimony. Wife posits, *inter alia*, that the trial court failed to adequately consider such factors as her need, Husband's ability to pay, the significant length of the marriage, and the provisions made with respect to marital property. Upon careful review, we agree with Wife on this issue.

Our statutory scheme regarding awards of spousal support, provided by Tennessee Code Annotated § 36-5-121 (2017), states in pertinent part:

(c)(1) Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinated such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.

(2) The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1)

spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

(d)(1) The court may award rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony or a combination of these, as provided in this subsection (d).

\* \* \*

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)　　The separate assets of each party, both real and personal, tangible and intangible;

(8)　　The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)　　The standard of living of the parties established during the marriage;

(10)　　The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)　　The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)　　Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

In the instant action, the trial court's final judgment states as follows with regard to alimony:

[T]he Court having considered the age, current health and station in life of the parties, respectively, along with the entire record and the applicable factors as set forth in T.C.A. § 36-5-121, finds and orders that Wife's claims for further or other additional alimony shall be and hereby are denied.

The trial court failed to make specific factual findings concerning the applicable statutory factors.

This Court has previously explained:

The Tennessee Supreme Court has consistently recognized that trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award. *See, e.g., Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105 (Tenn.

2011); *Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree,* 16 S.W.3d 356, 360 (Tenn. 2000). Because a trial court's "decision regarding spousal support is factually driven and involves the careful balancing of many factors," *Gonsewski,* 350 S.W.3d at 105 (footnote omitted), the role of an appellate court is not to second guess the trial court or to substitute its judgment for that of the trial court, but to determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support. *Id.; White v. Vanderbilt Univ.,* 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) ("If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative.").

*Horine v. Horine*, No. E2013-02415-COA-R3-CV, 2014 WL 6612557, at *5 (Tenn. Ct. App. Nov. 24, 2014). As the *Horine* Court elucidated, Tennessee Rule of Civil Procedure 52.01 requires a trial court to make specific findings of fact and conclusions of law. *See id*. at *7. This Court pointed out that the requirement to make findings of fact "'is not a mere technicality'" but instead "serves the important purpose of 'facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *See id.* (quoting *In re K.H*., No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 5, 2009)). "Without findings of fact from a trial court, we have nothing upon which to presume correctness." *Norris v. Norris*, No. E2014-02353-COA-R3-CV, 2015 WL 9946262, at *2 (Tenn. Ct. App. Aug. 24, 2015).

> As this Court has recognized concerning a lack of specific findings of fact:
>
> We note, however, that Rule 52.01 of the Tennessee Rules of Civil Procedure requires the trial court to state expressly its findings of fact and conclusions of law, even where the parties do not request it. Tenn. R. Civ. P. 52.01. If the trial court fails to do so, its decision is normally vacated and the cause remanded for such findings and conclusions; however, the appellate court may, in some circumstances, "soldier on" in the absence of them.

*In re S.J.*, 387 S.W.3d 576, 594 n.9 (Tenn. Ct. App. 2012); *Norris*, 2015 WL 9946262, at *2-3.

In *Norris*, this Court was confronted with a situation similar to the case at bar insofar as the trial court's order simply stated that the trial court had considered "all relevant factors contained within Tennessee Code Annotated § 36-5-121, as well as the testimony of the Parties and arguments of counsel" when making its alimony determination. *See Norris*, 2015 WL 9946262, at *2. The trial court made no specific

factual findings concerning the evidence presented or the statutory factors in its order. *See id.* Despite this shortcoming, the *Norris* Court determined to "soldier on," stating:

> We have available to us a record consisting of a technical record, a volume of transcript, and exhibits. We are not so inhibited by the Trial Court's limited order so as to be unable to resolve the issues on appeal. In the interest of judicial economy and to save the parties additional expenses, we elect to proceed and make our own determinations regarding where the preponderance of evidence lies as necessary.

*Id.* at *3.

Similarly, in the instant action, although the trial court failed to make specific findings of fact concerning the evidence presented and the applicable statutory factors, we have the ability to "soldier on" and review the appellate record, in the interest of judicial economy, as to the trial court's determination that Wife was not entitled to an award of spousal support. We likewise have available to us the technical record, a volume of transcript, and exhibits, from which we are readily able to determine that the trial court erred in failing to award alimony to Wife based upon the applicable statutory factors.

Concerning the first statutory factor and the parties' respective incomes, the proof in this matter demonstrated that Husband enjoyed a net income in the amount of $6,600.56 per month at the time of trial. Husband's income and expense statement presented at trial specified that he received $1,291.00 per month in Social Security retirement benefits; $3,866.24 per month in disability compensation from the Veteran's Administration; and $1,443.32 per month in military retirement benefits.[2] Wife's income at the time of trial, by contrast, consisted solely of her Social Security retirement benefits in the amount of $398.00 per month. Wife conceded that following the divorce, she would receive an increase in this amount, approximately $130.00 to $150.00 per month, based on Husband's Social Security retirement benefits.[3] Furthermore, Wife's income

---

[2] Previous Tennessee decisions have clarified that disability benefits, including those stemming from military service, can be considered as income for purposes of determining whether an award of alimony is appropriate. *See Gragg v. Gragg*, 12 S.W.3d 412, 418-19 (Tenn. 2000) ("Logic dictates that disability benefits and income should be treated in the same manner since disability benefits are income replacement. . . . disability benefits should be considered when determining alimony and child support obligations."); *Oakes v. Oakes*, 235 S.W.3d 152, 161 (Tenn. Ct. App. 2007) ("[T]here is no law . . . which prohibits state courts from considering a spouse's military disability pay in determining the non-military spouse's alimony award."); *Boyatt v. Boyatt*, No. E2008-00934-COA-R3-CV, 2009 WL 1372232, at *5 (Tenn. Ct. App. May 18, 2009) ("[T]he trial court simply considered Husband's military disability in determining the alimony award. This is certainly permissible.").

[3] There was no proof that this increase in Wife's monthly Social Security retirement benefit would result in a reduction in Husband's monthly Social Security retirement benefit.

was increased by the trial court's award of a portion of Husband's military retirement benefits in the amount of $481.11 per month. Husband's income would presumably be decreased by a similar amount. As such, it would appear that Husband would still enjoy a net income of $6,000.00 or more per month and that Wife's net income would be approximately $1,000.00 per month, thus demonstrating a clear economic disparity between the parties.

With respect to statutory factors two through five, there was no proof that either party had a significantly greater education than the other. There was also a dearth of evidence that additional education would improve either party's earning capacity inasmuch as both parties had retired by the time of trial. This was a marriage of considerable length, with the parties remaining married for forty-six years. Husband was seventy-two years of age at the time of trial, and Wife was sixty-seven. Wife did not testify as to any health problems, aside from her need for dental work. Husband testified that he suffered from multiple myeloma as a result of his military service. Although his condition required him to take certain medications on a daily basis, Husband stated that he had been in remission for seven years at the time of trial and felt that he was in "pretty good shape."

Statutory factors six and seven were inapplicable in this matter because the parties had no minor children and no significant separate assets. Concerning factor eight, the trial court divided the parties' marital property almost equally at the time of the divorce, such that each party received a parcel of real property improved with a mobile home and a similar share of personalty and other assets. Although the parties did not appear to live an exorbitant lifestyle, consideration of their assets in accordance with factor nine demonstrates that they had lived comfortably during the marriage. Husband claimed monthly expenses, including his court-ordered obligation of paying for Wife's car, of $3,605.83 per month. With a monthly net income of approximately $6,000.00, Husband would enjoy a monthly overage of roughly $2,400.00. Wife claimed monthly expenses of $2,668.00, with a monthly net income of approximately $1,000.00. Therefore, Wife would suffer a monthly shortfall of at least $1,600.00.[4] With respect to the remaining

---

[4] Husband asserts that Wife's need is less than what is shown on her income and expense statement because B.P. and his fiancé live with Wife and therefore presumably contribute to her support. Wife testified at trial, however, that the expenses shown on her expense statement were solely hers, and B.P.'s testimony corroborated Wife's testimony on this issue. Husband argues in his appellate brief that the trial court considered Wife's living arrangement in denying her request for alimony and applied the presumption contained in Tennessee Code Annotated § 36-5-121(f)(2)(B) (2017), which states that when a person "is receiving alimony *in futuro* and the alimony recipient lives with a third person, a rebuttable presumption is raised that . . . [t]he third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded." Although there is no indication that the trial court applied such presumption, we note that its application would be inappropriate in this matter because (1) the language utilized in the statute specifically addresses a previous alimony award rather than an initial alimony determination, and (2) the evidence presented at trial would rebut the presumption in any event. *See, e.g., Jenkins v. Jenkins*, No. E2014-02234-COA-R3-

statutory factors, each party contributed to the marriage as wage earner and/or homemaker, and no proof was presented regarding relative fault.

Following our thorough review of the evidence in light of the applicable statutory factors, we conclude that the trial court erred by failing to award spousal support to Wife in this case. As our Supreme Court has explained: "Decisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors, with two of the most important factors being the disadvantaged spouse's need and the obligor spouse's ability to pay." *Mayfield v. Mayfield*, 395 S.W.3d 108, 116 (Tenn. 2012). An analysis of the statutory factors, especially Wife's need and Husband's ability to pay, demonstrates that an award of alimony to Wife is necessary in this cause due to Wife's relative economic disadvantage. We therefore reverse the portion of the trial court's judgment denying alimony to Wife.

We now determine the appropriate type, amount, and duration of alimony to be awarded to Wife in this matter. Although we recognize that the spousal support statute favors short-term support over long-term support, our thorough review of the evidence presented in light of the applicable statutory factors demonstrates that neither rehabilitative nor transitional alimony would suffice to bridge the economic gap between the parties. *See* Tenn. Code Ann. § 36-5-121(c)(2) ("[T]he economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties."). Transitional alimony is "appropriate when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce." *Gonsewski*, 350 S.W.3d at 109 (explaining that transitional alimony is a form of short-term support used to facilitate the transition from married to single life). Husband presented no evidence that Wife had the capacity for self-sufficiency with only a need for short-term financial assistance via transitional alimony. *See* Tenn. Code Ann. § 36-5-121(g)(1). Rehabilitative alimony is appropriate when the disadvantaged spouse can "achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse." *See* Tenn. Code Ann. § 36-5-121(e)(1). There was likewise no proof that Wife could be economically rehabilitated in this case. *See, e.g., Jenkins v. Jenkins*, No. E2014-02234-COA-R3-CV, 2015 WL 5656451, at *5 (Tenn. Ct. App. Sept. 25, 2015) (determining that rehabilitative alimony was inappropriate because "even with additional education or training, Husband presented no evidence that Wife's income level could ever be comparable to his.").

---

CV, 2015 WL 5656451, at *7 (Tenn. Ct. App. Sept. 25, 2015).

Wife worked little outside the home during the parties' marriage, instead fulfilling her role in the marriage as homemaker and primary caregiver for the parties' child. By the time of trial, Wife had already begun to draw Social Security retirement benefits. Because Wife possesses limited ability to improve her income or standard of living on her own and Husband's income is significantly greater, we conclude that long-term support is necessary in this case. *See Gonsewski*, 350 S.W.3d at 109.

Alimony *in futuro* can be awarded where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." *See* Tenn. Code Ann. § 36-5-121(f)(1); *see also Burlew v. Burlew*, 40 S.W.3d 465, 470-71 (Tenn. 2001). As our Supreme Court has explained:

> Alimony in futuro "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." *Riggs* [*v. Riggs*], 250 S.W.3d [453,] 456 n.2 [(Tenn. Ct. App. 2007)]. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. *Robertson* [*v. Robertson*], 76 S.W.3d [337,] 340 [(Tenn. 2002)]. While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." *Kinard* [*v. Kinard*], 986 S.W.2d [220,] 234 [(Tenn. Ct. App. 1998)].

*Gonsewski*, 350 S.W.3d at 107-08.

Following our thorough review of the evidence in this matter, we believe that an award of alimony *in futuro* in the amount of $1,600.00 per month is appropriate. This amount should appropriately address Wife's monthly shortfall concerning her income and expenses, and Husband clearly has the ability to pay such an award based upon his income. We therefore modify the trial court's judgment to award to Wife alimony *in futuro* in the amount of $1,600.00 per month.

V.  Attorney's Fees

Wife posits that the trial court erred by failing to award her attorney's fees as alimony *in solido*. As this Court has previously explained:

> Our review of an award of attorney's fees is guided by the principle that "'the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.'" *Mimms v. Mimms,* 234 S.W.3d 634, 641

(Tenn. Ct. App. 2007) (quoting *Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn. 2005)). "Reversal of the trial court's decision [regarding] attorney fees at the trial level should occur 'only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.'" *Church v. Church,* 346 S.W.3d 474, 487 (Tenn. Ct. App. 2010).

*Hernandez v. Hernandez,* No. E2012-02056-COA-R3-CV, 2013 WL 5436752, at *8 (Tenn. Ct. App. Sept. 27, 2013).

When determining whether to award attorney's fees as alimony *in solido*, the trial court should consider the evidence in relation to the statutory factors. *See Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992). As previously explained, the trial court failed to consider the applicable statutory factors listed in Tennessee Code Annotated § 36-5-121(i) when making its alimony determination in this matter. Consideration of these factors militates in favor of an award of alimony *in solido* to Wife. Wife currently has little income and no ability to replace assets. She is clearly economically disadvantaged compared to Husband because Husband's net monthly income is approximately six times greater than Wife's. The duration of the marriage was lengthy with the parties enjoying a comfortable lifestyle and both parties contributing to the marital estate. Husband has the greater ability to pay an award of attorney's fees, which would otherwise require Wife to deplete any assets she was awarded from the marital estate. Therefore, based on these factors, we conclude that the trial court erred by failing to award Wife attorney's fees as alimony *in solido*. We therefore remand this issue to the trial court for the determination of a reasonable amount of attorney's fees to be awarded to Wife at the trial court level.

To the extent that Wife has asserted in the argument section of her appellate brief that she should receive an award of attorney's fees on appeal, we note that Wife did not raise the issue of attorney's fees on appeal in her statement of the issues. As our Supreme Court has elucidated:

Appellate review is generally limited to the issues that have been presented for review. Tenn. R. App. P. 13(b); *State v. Bledsoe,* 226 S.W.3d 349, 353 (Tenn. 2007). Accordingly, the Advisory Commission on the Rules of Practice and Procedure has emphasized that briefs should "be oriented toward a statement of the issues presented in a case and the arguments in support thereof." Tenn. R. App. P. 27, advisory comm'n cmt.

*Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012); *see Owen v. Long Tire, LLC,* No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at *4 (Tenn. Ct. App. Dec. 22, 2011) ("The requirement of a statement of the issues raised on appeal is no mere technicality.").

Because Wife did not raise the issue of attorney's fees on appeal in her statement of the issues, we determine this issue to be waived. *See Champion v. CLC of Dyersburg, LLC,* 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011) ("An issue not raised in an appellant's statement of the issues may be considered waived.").

## VI. Conclusion

For the foregoing reasons, we reverse the portion of the trial court's judgment denying an award of alimony and attorney's fees to Wife. Based upon our thorough review of the evidence and the applicable statutory factors, we conclude that Wife is entitled to an award of alimony *in futuro* in the amount of $1,600.00 per month, and we modify the trial court's judgment accordingly. We further determine that Wife is entitled to an award of attorney's fees incurred at the trial court level as alimony *in solido*. We remand the issue of the amount of reasonable attorney's fees to be awarded to Wife to the trial court for entry of an appropriate award. We affirm the trial court's judgment in all other respects. Regarding Wife's request for an award of attorney's fees incurred on appeal, we determine that such request has been waived. Costs on appeal are assessed to the appellee, Sherman Lane Pierce.

_____
THOMAS R. FRIERSON, II, JUDGE